14483

STATE v. BROWDER

(101 S. E., 302)

July, 1936.

*Messrs. Epps & Epps* and *George D. Levy,* for appellant,

*Messrs. F. A. McLeod, Solicitor,* and *Shepard K. Nash,* for respondent,

May 12, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The defendant was convicted of statutory arson under Section 1132 of the 1932 Code, and appeals to this Court upon exceptions assigning error to the presiding Judge in the admission of testimony, and errors in his charge to the jury. The evidence in the case tended to show the following facts:

The defendant, Browder, owned a dwelling house in the City of Sumter, in which he and his wife resided. On March 13, 1936, between 4:25 and 4:35 o'clock p. m., it is charged in the indictment, he burned, or attempted to burn, this house. The house was insured against loss by fire in the sum of $2,500.00, and he also carried a policy in the sum of $1,875.00, insuring the furniture and furnishings in the house against loss by fire. From Monday, March 9th, until the afternoon of March 12th, the defendant and his wife were absent from Sumter, but they were at home on the day of the fire, which occurred, as stated, on Friday, March 13th.

Witnesses for the State testified that the defendant and his wife left the house on Friday afternoon, March 13th, at about 4 o'clock, and that the fire was discovered and the alarm given some thirty or forty minutes thereafter. The testimony of the defendant tended to show that he and his wife left the house at 3 o'clock on the day of the fire; other witnesses for the defense testified that the defendant and his wife left between 3 and 3:30 o'clock on the afternoon of the fire.

It appears from the evidence of two of the witnesses that they discovered the fire, and when they attempted to get into the house they found the back screen door latched, and all outside doors locked; the sashes were down and latched, and the shades were drawn. They broke open the rear door of the house in order to get in. According to these two

witnesses, there was no indication of any kind that the house had been broken into from the outside.

The fire department of the City of Sumter responded promptly to the alarm, and discovered successively four separate fires burning within the house; two in the kitchen and two in the bathroom, which was on the other side of the house. The testimony showed that four separate holes had been cut in the walls, about six inches from the floor, and about five or six inches square, within which the fires had been set. Three of the fires had burned considerably, but the fire in the fourth hole had smouldered and burned very little. It could be seen that this opening had been made by boring a square of smaller holes with an auger bit, and then knocking out the center. The marks and indentations were plainly visible where the auger had been used for this purpose. Pieces of the board which had been knocked out between the auger holes had been stuffed back into the holes with other kindling. This kindling was similar to kindling which was found in the woodbox in the kitchen. An auger bit which was found in the tool box of the defendant was of the same size as the smaller holes bored in the wall. This bit had fresh shavings on it, and there was testimony that the defendant after his arrest, upon seeing the auger bit lying upon the desk, attempted to rub off the fresh shavings around the point of the bit.

In the hole which had not burned to any extent were found two copies of the Sumter *Daily Item* (to which newspaper defendant subscribed), one of the copies being dated March 11 and the other March 12, 1936. The defendant testified that these newspapers had been found by him on the front porch and had been taken into the house when he and his wife returned home on the 12th from a visit to the latter's mother.

The defendant testified that he did not know of any one who had any enmity toward him; there was no evidence to show that any person was loitering around the house of the

defendant on the afternoon of the fire, or that any person broke in and entered the house, other than the entry made by the two witnesses who discovered the fire.

E. H. Lyman, the assistant chief of the fire department, who responded to the alarm and who was in charge of the firemen at the scene of the fire, testified for the State.

The first exception attributes error to the trial Judge ■ in allowing this witness to give his opinion as to how long the fires in the defendant's house had been burning. The admission of this testimony was allowed by the trial Judge after the witenss had qualified as an expert. It appears from the testimony that Mr. Lyman had been an active member of the fire department for 33 years. He described in minute detail the progress which had been made by each one of the four fires—two in the bathroom and two in the kitchen—when he reached the scene: the size of the wall area burned; the kind of combustible material used to set the fires; the tight construction of the rooms, together with the fact that the sashes were down and the doors closed; and the absence or presence of any draft which might increase the spread of the fire, or otherwise affect it. We think the testimony was competent.

This testimony was competent for another reason.

The question to which exception was taken was asked by the solicitor on redirect examination, and was in direct reply to matters brought out on cross examination by defendant's counsel. In his cross examination of this witness, counsel for the defense, in several instances, let down the gap and opened up this avenue of interrogation.

We should say, parenthetically, that this house suffered from two fires, both of incendiary origin, the first fire being the one for which the defendant was on trial. The second fire occurred a month or two thereafter.

The defense counsel, referring to the relative length of time these fires had been burning before they were discovered asked these questions of the witness: "How long would

you say that second fire had been burning, from your experience with fires? * * * You have a great deal of experience with fires? * * * This last fire, there was no evidence it had been burning more than 15 or 20 minutes, was there? * * * The first fire was a much quicker one, wasn't it? * * * The second fire was a much smaller one than the first? * * * How long would you say it (the first fire) had been burning? * * * From the appearance of those four fires, some of them had been set considerably before the others?"

These questions were answered by the witness in detail.

The question asked by the solicitor on redirect examination, to which exception is taken, was in reply and bore upon the identical point, and, under the circumstances, we think it was competent.

The next exception charges error to the trial Judge in refusing to grant the defendant's motion for a mistrial on the ground that the solicitor asked the defendant on cross examination, "How many fires have you had?"

It is argued that this question carried the intimation that the defendant had previously had a number of fires, and would naturally inflame the mind of the jury against him; that it was prejudicial, irrelevant, and constituted an attack upon the reputation of the defendant, when his reputation had not been tendered, and was not in issue. From a careful examination of the record, we find that here, too, the defense counsel opened a breach, which made the question competent. Upon direct examination by defense counsel it was brought out that a house owned by the defendant, located on the identical spot where the defendant's present dwelling house stands, was destroyed by fire 12 years ago. The defense counsel had also referred in his examination of the defendant to the fire which is the subject of the arson charge, to which we have already referred as the first fire; and he also brought out evidence with reference to what we have referred to as the second

fire. The defendant was questioned about these fires also by the solicitor on cross examination, without objection. Upon recross examination, after referring to the fire which had occurred 12 years ago, he then asked, "How many fires have you had?" The question was not answered because defense counsel immediately objected on the ground that it was an improper question. The Court sustained the objection, and cautioned the jury to disregard it, and not to let it play any part in their deliberations. But it is contended that the defendant was damaged by the mere asking of the question.

The question as propounded, it seems to us, cannot be considered as an attack upon the reputation of the defendant; it was in response to his testimony on direct examination in relation to other fires, three having been testified to by him. It appears to have been a perfectly natural question, following the testimony of the defendant on direct examination as to the three fires at the same place. There was no implication in the question that the defendant had set any other fire, or had caused any other fire to be set.

It was merely a recapitulation of those fires already testified to.

The appellant directs our attention to the rule announced in *State v. Gilstrap,* 149 S. C., 445, 147 S. E., 600, *State v. Marlowe,* 120 S. C., 205, 112 S. E., 921, and *State v. Peden,* 157 S. C., 459, 154 S. E., 658, wherein the Court discusses the prejudicial effect of irrelevant testimony, requiring a new trial. In our opinion, from a careful consideration of those cases, they are inapplicable to the facts of this case and the issue here made.

It is next contended that the following excerpt taken from the charge of the trial Judge was erroneous: "Where evidence offered by the defendant as to his whereabouts causes a reasonable doubt in the minds of the jury as to whether or not he was at the place where the crime is alleged to have been committed, the State being called upon to prove

that fact beyond a reasonable doubt, if any testimony as to other whereabouts raises a reasonable doubt in the minds of the jury, then the defendant is entitled to the benefit of such reasonable doubt."

It is argued that this instruction led the jury to conclude that the only evidence which they could consider on the defendant's behalf as to an alibi was evidence offered by the defendant himself as to his whereabouts, whereas the defendant was entitled to the benefit of the failure of the State to prove beyond a reasonable doubt that the defendant was present when the fire was set.

An examination of the entire instruction given by the trial Judge pertaining to alibi shows no reversible error. The excerpt from the charge to which appellant calls attention is the last part of a sentence which the trial Judge used in dealing with the question of alibi. At the risk of unduly lengthening this opinion, we give the entire charge on this subject, from which it will be seen that the jury were instructed time and again that the State is called upon to prove beyond a reasonable doubt that the person charged with the offense was at the place in order to commit the crime of which he is charged: "Now, you have heard discussed what we term in the law, alibi. That means the person is somewhere else other than the place itself. That is not an affirmative defense, because the State is called upon to prove beyond a reasonable doubt that the person was at the place in order to commit the crime of which he is charged. For instance, Mr. Foreman, if a man is charged this afternoon with committing a crime in Columbia, and if he is in attendance upon this Court, he could not commit a crime in Columbia if he is here, and where evidence offered by the defendant as to his whereabouts causes a reasonable doubt in the minds of the jury as to whether or not he was at the place where the crime is alleged to have been committed, the State being called upon to prove that fact beyond a reasonable doubt, if any testimony as to other where-

abouts raises a reasonable doubt in the minds of the jury, then the defendant is entitled to the benefit of such reasonable doubt."

It is elementary that one part of a charge cannot be ■ lifted out of its context and made the basis of reversible error, where the charge taken as a whole presents a fair and impartial statement of the law. *State v. Wilson*, 115 S. C., 248, 105 S. E., 341. The instruction here is similar to the instruction sustained in *State v. Anderson*, 59 S. C., 229, 37 S. E., 820.

We are unable to conclude that this charge misled or ■ · confused the jury, or resulted to the prejudice of the defendant.

The next issue presented on this appeal also has to do with an alleged erroneous instruction. When the presiding Judge had concluded his main charge to the jury, and asked if there were any other requests to charge, counsel for the defendant said: "I will ask your Honor to charge the jury in any case where the evidence would admit of the guilt of either one of two persons, that in such case it is incumbent upon the State to point out the guilty person beyond a reasonable doubt and the jury could not convict in such case."

Whereupon the Judge stated to the jury: "Well, I have already charged that in substance. If, under the testimony in the case, if the State has proved to your satisfaction beyond a reasonable doubt somebody· else did it, then of course you could not convict the defendant, unless you are satisfied that the defendant was present at the time, and knew of the transaction, present, aiding, abetting and assisting in the commission of it, if he was present at that time, he would be just as guilty as the other person."

It is argued, and we think may freely be conceded, ■ that the requested instruction contains a sound proposition of law. But it is said that instead of giving

this instruction the trial Judge committed error in the instruction which he did give, and which we have quoted.

The appellant contends that it was not a question as to whether the State or the defendant had proved beyond a reasonable doubt that somebody else committed the crime, but it was a question as to whether or not the entire evidence in the case would admit of the guilt of either one of two persons.

We are unable to perceive how the appellant could have been prejudiced by this charge. It was the duty of the State to prove the guilt of the defendant beyond a reasonable doubt, and the trial Judge again and again had explictly instructed the jury that they must find from the testimony beyond a reasonable doubt that the defendant was present, and committed the crime charged against him in the indictment. Again, after this request to charge was made, the trial Judge reiterated his previous instruction by stating to the jury that, if the State failed to make out its case to the satisfaction of the jury beyond a reasonable doubt, they should acquit the defendant. It would be an imposition upon credulity to believe that the jurors were misled or confused by this instruction, or that the defendant was prejudiced.

The appellant requested the trial Judge to charge it is better for 999 guilty persons to be freed than for one innocent person to be convicted. This instruction was not given, and for this reason the appellant assigns error. The exception is not supported by argument or by citation of authority.

In criminal cases, the humanity of our law requires that the guilt of the accused shall be fully proved. It is deemed better in the administration of justice that many guilty persons escape rather than that one innocent person should suffer. This maxim, obviously, is not founded upon any technical rule or system of pleading, but is based upon broad principles of humanity, which forbid the infliction of pun-

ishment until the commission of the crime is to a reasonable certainty established. The full intent and meaning of this maxim is satisfied and fulfilled under our law, when the jury is instructed that the guilt of the accused must be proved by the State beyond a reasonable doubt.

All exceptions are overruled.

The judgment of the lower Court stands affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.